# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN PHELAN, | ) | |
| Plaintiff | ) | |
| v. | ) | NO. 3:16-cv-0886 |
| | ) | CHIEF JUDGE CRENSHAW |
| GENERAL MOTORS, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Pending before the Court is a Motion for Summary Judgment (Doc. No. 24) filed by General Motors ("GM"). For the reasons stated herein, the Motion will be GRANTED, and this action will be DISMISSED.

## BACKGROUND

John Phelan was hired at GM's Spring Hill, Tennessee manufacturing facility in 2013 and was fired on January 4, 2016. Phelan worked his way up to a Maintenance Group Leader ("MGL") position in General Assembly. In October of 2015, Phelan reported to Maintenance and Engineering Manager Charlie Sageman. At that time, the Spring Hill facility was transitioning from a low volume production facility to a full-time production facility, and, to oversee this transition in General Assembly, Jill Phillips Ortega became General Assembly's Area Manager. One of her tasks was to gauge how the existing maintenance structure needed to change to support the coming transformation to the facility.

During this time, Ortega called for MGLs to take ownership for improvement in responding to maintenance problems, analyzing and reporting problems, and standardizing and communicating steps for preventative and ongoing fixes so that problems would not recur. As part of this process,

Ortega directed that the End of Shift ("EOS") reports of MGLs should contain more details than they had previously contained. GM contends that EOS reports are important because they help better communication within the production facility. GM argues that an EOS report requires an MGL to analyze each mechanical breakdown by indicating the issue, the root cause, and the countermeasure (to avoid the problem in the future). GM asserts that an EOS report should be completed each day no later than 30 minutes after the end of the MGL's shift. GM argues that Phelan was fired because of repeated poor performance, a "stubborn unwillingness to follow directions," including directions about the EOS reports, and for a safety violation.

Phelan has alleged that GM terminated his employment in violation of the Americans with Disabilities Act ("ADA"), Title VII, and Tennessee's Occupational Safety and Health Act ("TOSHA"). Phelan asserts that he was fired because he has a disabled daughter and he had to take time off to help her; because he complained that his supervisor engaged in racial harassment and discrimination; and because he refused to participate in an OSHA safety violation.

## MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; Pennington v. State Farm Mut. Automobile Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. Van Gorder v. Grand Trunk Western Railroad, Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## AMERICANS WITH DISABILITIES ACT

The ADA prohibits employers from, among other things, "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."[1] Shoemaker v. ConAgra Foods, Inc., 219 F.Supp.3d 719, 734 (E.D. Tenn. 2016) (quoting 42 U.S.C. § 12112(b)(4)).

---

[1] The Sixth Circuit has relied on three theories into which association discrimination claims generally fall: (1) the expense theory, where an employee suffer an adverse employment action because of his association with a disabled individual covered under the employer's health plan, which is costly to the employer; (2) the disability by association theory, which involves either a situation where the employer fears that the employee may contract the disability of the person he is associated with or that the employee is genetically predisposed to develop a disability that his relative has; or (3) the distraction theory, based on the employee's being somewhat inattentive at work because of the disability of someone with whom he is associated. Schindewolf v. City of Brighton, 107 F.Supp.3d 804, 820 (E.D. Mich. 2015). These theories are not an exhaustive list. Id. In his Response to the pending Motion, Phelan asserts that it "is likely" GM believed he was distracted by his association with his disabled daughter and therefore unable to fulfill his work duties, and it "is also possible" that GM was concerned about the expense of covering insurance for a disabled child. (Doc. No. 28 at 7.) The Complaint does not mention these three categories. (Doc. No. 1.)

To establish a *prima facie* case of associational discrimination, a plaintiff must produce evidence from which a reasonable jury could conclude that (1) he was qualified for the position; (2) the employer subjected him to an adverse employment action; (3) the employer knew that the plaintiff was associated with a disabled individual; and (4) the adverse employment action raises a reasonable inference that the disability of the relative was a determining factor in the decision. Id. (citing Stansberry v. Air Wisconsin Airlines Corp., 651 F.3d 482, 487 (6th Cir. 2011)). The Complaint alleges that GM discriminated against him because of his association with his disabled daughter by disciplining and eventually firing him.

GM argues that Phelan's ADA claim is based on the alleged failure to provide him notice of his Family and Medical Leave Act ("FMLA") rights. Phelan has not asserted an FMLA claim, however, and contends that the failure to advise him of his FMLA rights is merely one of several ways GM treated him differently from employees without disabled relatives. Phelan has not identified any specific employees without disabled relatives who were similarly situated and were advised of their FMLA rights. To the extent his ADA claim is based upon this failure to advise him of his FMLA rights, Phelan has failed to produce evidence from which a reasonable jury could find for him on that claim.

The safety violation for which Phelan was suspended involved what is called a "lockout violation." GM policy requires all employees who are working in an area where production equipment is down and being repaired to "lock out" the machine before starting work.[2] (Doc. No. 27 at 16.) GM alleges that it is an MGL's responsibility to make sure that, before anyone enters the

---

[2] Locking out a machine means disabling the power source to the equipment so the equipment does not start operating while maintenance employees and other personnel are working in the area. (Doc. No. 27 at 16.)

area being repaired, the machine is locked out. Id. GM contends that Phelan allowed a violation of the lockout policy on his "watch." Phelan, on the other hand, argues that, pursuant to the policy of his manager, Mr. Sageman, the most senior employee present during a breakdown is "in charge" during that breakdown and responsible for any lockdown. Id. The Court cannot find the pages of his deposition that Phelan cites for this alleged fact in the record, so it cannot consider them. Phelan contends that other managers, higher up than he was, witnessed this particular lockout violation and were not punished, but Phelan was suspended for five days because of his disabled daughter. (Doc. No. 27 at 17.) Phelan does not identify these "higher-up" managers or show whether any of them had disabled relatives.

In his Response to GM's Motion, Phelan asserts that, a short time before he was fired, Ms. Garland (identified in her Declaration as an HR Business Partner at GM's Spring Hill, Tennessee facility) specifically told Phelan that his job was more important than his disabled daughter. Phelan cites to his own deposition for this fact, but the Court is unable to find the pages he cites in the record, so it cannot consider them.

Even if he has shown the first three elements of an ADA claim, Phelan has failed to come forward with more than a scintilla of evidence to show a causal connection or to raise a reasonable inference that his daughter's disability was a determining factor in the decision to suspend and then to fire him. Therefore, GM's Motion for Summary Judgment on Phelan's ADA claim will be granted and that claim will be dismissed.

## TITLE VII

It is unlawful for an employer to discriminate against an employee because the employee has opposed an unlawful employment practice of the employer. 42 U.S.C. § 2000-3(a). To make a *prima*

*facie* case of such retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) the exercise of his protected rights was known to the employer; (3) the employer took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013). In University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517 (2013), the Court held that a plaintiff making a Title VII retaliation claim must establish that his or her protected activity was a "but-for" cause of the alleged adverse action by the employer. Id. at 2533-34.[3]

Phelan contends that he reported, via a computer hotline at GM, the racial and sexual harassment by his manager against a female, black co-worker. He alleges that GM fired him for this opposition to racial and sexual discrimination. GM contends that Phelan cannot show a causal connection between his complaints and his firing because no GM employee involved in Phelan's firing was aware of his protected activity. Phelan argues that GM could have easily traced the anonymous email to his computer, but "could have" is mere speculation. Phelan has cited to no evidence that rebuts the statements of all decision-makers that they did not know about his complaints. (Doc. Nos. 26-3, 26-4, 26-5, 26-6, 26-7 and 26-8.)[4]

Accordingly, Phelan has failed to show a causal connection between his anonymous complaints and the decision to terminate his employment at GM. The Motion for Summary Judgment on this Title VII retaliation issue will be granted.

---

[3] Once a *prima facie* showing is made, the employer must articulate a legitimate non-retaliatory reason for its action, and then the burden shifts back to the employee to show that the proffered reason was not its true reason but merely a pretext for retaliation. Harris v. Metropolitan Gov't of Nashville and Davidson County, 594 F.3d 476, 485 (6th Cir. 2010).

[4] GM's ability to produce copies of the complaints after this litigation was filed, in discovery, when they were specifically searching for Phelan's emails, does not change this result.

# TENNESSEE OCCUPATIONAL SAFETY AND HEALTH ACT

Phelan alleges that GM violated TOSHA by retaliating against him for his opposition to safety health regulations under State law.[5] Tennessee law provides that no employee shall be discharged or discriminated against because he filed a complaint, instituted or caused to be instituted a proceeding under or related to the Occupational Safety and Health Act in Tennessee or because he exercised rights afforded by TOSHA. Tenn. Code Ann. § 50-3-106(7) and § 50-3-409(a).

The Complaint alleges that Phelan's supervisor, Sageman, had a practice of closing unfinished safety preventative maintenance orders and reports. Phelan contends that he resisted this practice and refused to sign off on unfinished reports, as he believed it was unethical and illegal. Phelan alleges that Sageman informed him, in response to Phelan's refusal, that he was "going to crash and burn." (Doc. No. 1 at 4.)

TOSHA specifically provides that any employee who contends he has been discriminated against or discharged in retaliation for his protected activity under TOSHA may, within thirty days after the violation occurs, file a complaint with the commissioner, alleging the discrimination. Tenn. Code Ann. § 50-3-106(8) and § 50-3-409(b)(1). Thus, TOSHA does not authorize an employee to bring a private cause of action in court based upon alleged violations of the statute. McCarthy v. G.UB.MK Constructors, 2017 WL 1031980 at * 7 (E.D. Tenn. March 15, 2017). Therefore, Phelan's TOSHA claim will be dismissed.

---

[5] Phelan has represented that he has not brought a claim for violation of the Tennessee Public Protection Act ("TPPA"), so the Court need not address that statute. See Doc. No. 28 at 12.

## COMMON LAW RETALIATORY DISCHARGE

The Complaint alleges, in Count III, that GM terminated Phelan for "multiple illegal reasons, including in retaliation for opposing unlawful sexual harassment of a black female per Tenn. Code Ann. § 4-21-301(1)." (Doc. No. 1 at 6.) That statute is part of the Tennessee Human Rights Act ("THRA") and provides, among other things, that it is a discriminatory practice for a person to retaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by the THRA. Retaliation under the statute cited by Phelan is a statutory claim, not a common law retaliatory discharge claim.

To prevail on a retaliation claim under the THRA, an employee must show that: (1) he engaged in activity protected by the THRA; (2) the exercise of his protected rights was known to the employer; (3) the employer thereafter took a materially adverse action against the employee; and (4) there was a causal connection between the protected activity and the materially adverse action. Weaver v. Diversicare Leasing Corp., 2014 WL 3734579 at * 17 (Tenn. Ct. App. July 28, 2014). GM argues that no decision-maker involved in Phelan's firing was aware of his protected activity, citing Declarations of six of its management employees. Phelan has not come forward with evidence to rebut these denials. Therefore, Phelan's claim for retaliation under the THRA will be dismissed.

## CONCLUSION

For these reasons, GM's Motion for Summary Judgment (Doc. No. 24) will be granted, and Phelan's Complaint will be dismissed.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE